UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SEVEN NETWORKS, LLC,<br><br>Movant,<br><br>v.<br><br>CEQUEL III COMMUNICATIONS I, LLC D/B/A SUDDENLINK COMMUNICATIONS, AND CABLE ONE, INC.<br><br>Respondents. | CIVIL ACTION NO. 3:18-MC-00017 |

# SEVEN NETWORKS' MOTION TO COMPEL SUDDENLINK AND CABLE ONE TO PROVIDE INSPECTIONS OF GOOGLE'S SERVERS AND SERVER ROOMS

**BACKGROUND**

On May 17, 2017, SEVEN filed *SEVEN Networks, LLC v. Google, Inc.*, No. 2:17-cv-442, in the Eastern District of Texas.[1] The next week, the Supreme Court issued its *TC Heartland* opinion, holding that, for purposes of the patent-venue statute, a domestic corporation "resides" only in its state of incorporation. *See generally TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017); *see also* 28 U.S.C. § 1400(b). Google moved to dismiss or transfer SEVEN's lawsuit in light of *TC Heartland*, but it withdrew that motion when SEVEN amended its complaint to add new venue allegations. Google then renewed its Motion to Dismiss or Transfer nine days before the Federal Circuit interpreted the "regular and established place of business" prong of the patent-venue statute in *In re Cray*. *See generally Cray*, 871 F.3d 1355 (Fed. Cir. 2017). SEVEN moved for leave to conduct expedited venue discovery in light of that decision.

On December 22, 2017, the Court ordered the Parties to engage in venue discovery, to determine whether Google has a "regular and established place of business" in the Eastern District of Texas. *See* ECF No. 107; *see also Cray*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). Due to "the front-loaded nature of the venue inquiry," the Court ordered the Parties to complete this discovery by February 22, 2018.

Now, two months later, in addition to other delay tactics, Google has avoided providing relevant discovery by improperly attempting to shift some of its discovery obligations to third-party internet service providers (ISPs), including Cequel III Communications I, LLC d/b/a/ Suddenlink Communications (Suddenlink), and Cable One, Inc. (Cable One), which also decline

---

[1] Google, Inc. later converted to an LLC. This name change is reflected in the caption of the currently pending action.

to cooperate. As a result, SEVEN still has not been able to inspect the Google Global Cache (GGC) servers located at the Suddenlink and Cable One facilities in the Eastern District. Because these inspections would provide information relevant to the venue inquiry under *Cray* and would not unduly burden Suddenlink or Cable One, SEVEN asks the Court to compel Suddenlink and Cable One to provide them.[2]

## Argument

### A. Legal Standard

The Federal Rules provide for broad discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "When a subpoena is issued as a discovery device, relevance for purposes of the undue burden test is measured according to the standard of Federal Rule of Civil Procedure 26(b)(1)." *Andra Grp., LP v. JDA Software Grp., Inc.*, 312 F.R.D. 444, 449 (N.D. Tex. 2015) (internal quotation marks and alterations omitted). "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005) (internal quotation marks omitted). As the Eastern District's Local Rules explain, "relevant to any party's claim or defense" includes information that, among other things: "would not support the disclosing parties' contentions"; "is likely to have an influence on or affect the outcome of a claim or defense"; and "is information that reasonable and

---

[2] Because the Court ordered the Parties to complete venue discovery by February 22, SEVEN and Google have concurrently filed a Joint Motion to Extend Venue-Discovery Deadline in the Eastern District case. Further, SEVEN intends to seek Respondents' consent to transfer this Motion to the issuing court (the Eastern District). Absent consent, SEVEN will move to transfer this Motion to that court.

competent counsel would consider reasonably necessary to prepare, evaluate, or try a claim or defense." *See* Eastern District of Texas Local Rule CV-26(d).

Here, the Federal Circuit has explicitly defined what is relevant to determine whether a defendant has a "regular and established place of business" in a district: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *Cray*, 871 F.3d at 1360. Thus, "if there is any possibility that the information [SEVEN seeks] may" have any bearing on any one of these three factors, it is relevant for the purposes of discovery. *See Merrill*, 227 F.R.D. at 470; *see also id*.

Because Suddenlink and Cable One have not complied with SEVEN's subpoenas seeking inspections of the GGC servers and the server rooms that house them, SEVEN moves to compel these inspections, consistent with Rule 34(c).

**B. The ISPs have not permitted SEVEN to inspect Google's GGC servers.**

As Google explained in its Motion to Dismiss:

> As part of the Google Global Cache ("GGC") program, Google has a small number of edge network caching servers at locations [in the Eastern District of Texas] owned by Internet service providers ("ISPs"), with whom Google has a contractual relationship.

*SEVEN Networks, LLC v. Google*, No. 2:17-cv-442, ECF No. 49 at 14 (E.D. Tex. Sept. 12, 2017).

The known facts establish that these servers are located at (and are themselves) "physical places," and that these places are "regular and established places of [Google's] business."[3] And

---

[3] Specifically, *Cray* explains that a place is "a part of a building set apart for any purpose . . . from which business is conducted." *Cray*, 871 F.3d at 1362 (internal quotation marks omitted). Even Google has admitted that its servers are housed in parts of buildings set apart for Google. *SEVEN Networks, LLC v. Google, Inc.*, No. 2:17-cv-442, ECF No. 90 at 4 (E.D. Tex. Oct. 26, 2017) (filed under seal) ("The GGC servers are . . . hosted by third party ISPs *in physical locations* owned by the ISPs." (emphasis added)). Likewise, the servers satisfy the "regular and established" requirement, because they operate in a "steady, uniform, orderly, and methodical

as SEVEN has explained, Google's host agreements with the ISPs demonstrate that the spaces within the ISPs' server rooms that house Google's servers are places "of Google." For example, the agreements ███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████[4] And Google ███████████████████████

████████████████████████████.[5]

But to provide the Court with all the information it needs to make "substantive applications of [recent changes to venue] law," see *SEVEN Networks, LLC v. Google, Inc.*, No. 2:17-cv-442, ECF No. 113 (E.D. Tex. Feb. 14, 2018), SEVEN has asked Google and two[6] ISP hosts for discovery related to Google's GGC servers. In its initial subpoenas to the ISPs, SEVEN included document requests, deposition topics, and requests for inspection.[7] But in an effort to minimize any potential burden, SEVEN offered to forego seeking documents and depositions and instead to limit its subpoenas to the inspection of the servers and server rooms "for ten to fifteen minutes." With these inspections, SEVEN seeks simply to photograph Google's servers and the

---

manner." *See Cray*, 871 F.3d at 1362 (internal quotation marks and alterations omitted). *Compare also id.* at 1369 ("[I]f an employee can move his or her home out of the district at his or her own instigation, *without the approval of the defendant*, that would cut against the employee's home being considered a place of business of the defendant." (emphasis added)), *with SEVEN Networks, LLC v. Google, Inc.*, No. 2:17-cv-442, ECF No. 76 at ████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████.

[4] *See* Beta Service Agreement ¶ 11.

[5] *See* Beta Service Agreement ¶ 10 (emphasis added).

[6] SEVEN initially subpoenaed a third ISP, but later canceled that inspection upon discovering that no Google-owned servers were at that location. Google identified servers in other ISP locations after it was too late for SEVEN to subpoena them.

[7] *See* App'x 1–26: Notices of Subpoenas to Suddenlink and Cable One.

"physical spaces" that house them, to better position the Court to determine whether they are "places" and whether they are places "of Google." Together with the host agreements that ███████████████████████████████████████████, these photographs will inform the Court's assessment of whether "[Google] owns or leases the [spaces that house its servers], or exercises other attributes of possession or control over th[ose] place[s]." *See Cray*, 871 F.3d at 1364. Far from burdensome, these brief inspections would barely be noticeable— SEVEN has committed not to touch or otherwise interfere with the equipment, and to allow the ISPs to cover any screens or otherwise protect sensitive information.

But both Google and its ISP partners deny SEVEN these inspections. Google defers to the ISPs, claiming that it has no control over the their locations. And in turn, both ISPs parrot verbatim refusals in response to SEVEN's subpoenas: "[ISP] will not permit inspections in response to this Request." But of course, between Google and the ISPs, someone has access to Google's servers. The inspections SEVEN seeks are relevant, unburdensome, and well within the scope of permissible discovery. SEVEN therefore asks the Court to compel Suddenlink and Cable One to provide inspections of the GGC servers at their Eastern District of Texas facilities.

## Conclusion

The discovery SEVEN seeks from Suddenlink and Cable One is relevant to whether Google has a "regular and established place of business" in this District. SEVEN therefore respectfully asks the Court to compel Suddenlink and Cable One to allow SEVEN to inspect Google's GGC servers.

Dated: February 22, 2018

Respectfully submitted,

*/s/ Max Ciccarelli*

**Bruce S. Sostek**
  State Bar No. 18855700
  Bruce.Sostek@tklaw.com
**Max Ciccarelli**
  State Bar No. 00787242
  Max.Ciccarelli@tklaw.com
**Richard L. Wynne, Jr.**
  State Bar No. 24003214
  Richard.Wynne@tklaw.com
**Vishal Patel**
  State Bar No. 24065885
  Vishal.Patel@tklaw.com
**Nadia Haghighatian**
  State Bar No. 24087652
  Nadia.Haghighatian@tklaw.com
**Austin Teng**
  State Bar No. 24093247
  Austin.Teng@tklaw.com
**Matt Cornelia**
  State Bar No. 24097534
  Matt.Cornelia@tklaw.com

**THOMPSON & KNIGHT LLP**
One Arts Plaza
1722 Routh St., Suite 1500
Dallas, Texas 75201
214.969.1700
214.969.1751 (Fax)

**Samuel F. Baxter**
  Texas State Bar No. 01938000
  sbaxter@mckoolsmith.com

MCKOOL SMITH, P.C.
104 E. Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

**Theodore Stevenson, III**
  Texas State Bar No. 19196650
  tstevenson@mckoolsmith.com
**Eric S. Hansen**
  Texas State Bar No. 24062763
  ehansen@mckoolsmith.com

**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

**ATTORNEYS FOR PLAINTIFF
SEVEN NETWORKS LLC**

## CERTIFICATE OF SERVICE

I certify that on February 22, 2018, true and correct copies of the foregoing document and the accompanying appendix were served on counsel for Suddenlink and Cable One via email and Certified Mail, Return Receipt Requested to the below address:

Robinson Vu
Baker Botts LLP
910 Houston Street
Houston, Texas 77022-4495
Robinson.Vu@BakerBotts.com

/s/ Max Ciccarelli
Max Ciccarelli

## CERTIFICATE OF CONFERENCE

I certify that I and another lawyer from my firm, Nadia Haghighatian, conferred with counsel for Suddenlink and Cable One (the ISPs)—they share the same counsel—before filing this Motion. Specifically, on Tuesday, February 21, we informed counsel for the ISPs via telephone of the impending venue-discovery deadline in the Eastern District case, and requested that his clients make the GGC servers and server rooms available for inspection. Counsel for the ISPs represented that he would attempt to do so. But in an email exchange on February 22, counsel for the ISPs was still unable to offer dates for inspection. We emailed and called him to determine whether he would oppose this Motion, but we did not receive responses to those communications.

/s/ Max Ciccarelli
Max Ciccarelli